**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**LAWRENCE A. FORD,**

     **Petitioner,**               **CASE NO. 2:10-CV-052**
                                   **JUDGE GEORGE C. SMITH**
**v.**                               **Magistrate Judge E.A. Preston Deavers**

**MICHAEL SHEETS, WARDEN,**

     **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the instant Petition, Respondent's Return of Writ, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

## FACTS and PROCEDURAL HISTORY

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> On June 30, 2006, at the "Express Market" on East Fifth Avenue, in Columbus, Ohio, Eric Ford was shot and killed by Hussam Alaind. As a result of this killing, defendant was indicted on multiple charges. As amended before the jury trial began, the indictment charged defendant with one count of murder, a violation of R.C. 2903.02 (count one); one count of burglary, a violation of R .C. 2911.12 and a felony of the second degree (count two); one count of possessing criminal tools, a violation of R.C. 2923.24 and a felony of the fifth degree (count three); and one count of tampering with evidence, a violation of R.C. 2921.12 and a felony of the third degree (count four).
>
> A jury trial commenced on February 1, 2007, and the following evidence was adduced at that trial.
>
> Hussam Alaind's direct testimony indicated as follows. Alaind

worked the night shift at the Express Market on Fifth Avenue in Franklin County. He was not really responsible for security but he would stay at the Express Market at night even though it did not open until 7 a.m. Alaind was at the store during the night of June 30, 2006. He watched a movie and then fell asleep. He awoke to the sound of breaking glass, and he saw two men in the store. He retrieved a gun in the office where he had been sleeping. It was dark in the store and Alaind saw something in one of the man's hands, which he thought was a gun. Alaind shot the man, who was later identified as Eric Ford. Both of the intruders were wearing a mask and Alaind never saw either man's face. Alaind pointed the gun at the second intruder and shot the weapon. The second intruder disappeared and Alaind did not see him again. Alaind called 911, and the police arrived at the scene.

Defendant's counsel cross-examined Alaind regarding his ability to see the second intruder, including whether he could see what this man was wearing. Alaind essentially testified that it was dark, things happened very quickly, and he was unable to see what the second intruder was wearing.

Columbus Police Officer Peter Pappas was dispatched to the Express Market on June 30, 2006, to respond to a shooting. When he arrived at the scene, the gate to the store was open and one of the front windows was smashed. Officer Pappas was familiar with the store because he frequently had been dispatched to go there. Upon seeing the damage to the window, Officer Pappas drew his weapon. He loudly identified himself, and a man with a gun, later identified as Alaind, appeared near a corner of the store. He ordered Alaind to drop the weapon, and Alaind complied. Medics and other officers arrived at the scene. The medics were told to examine the person who had been shot inside the store, and the scene was secured by the officers.

Columbus Police Officer Jack Adkins was dispatched to the Express Market, which is located at the corner of Fifth Avenue and Peters Avenue, on June 30, 2006, as a result of the shooting. When the initial call went out regarding the shooting, Officer Adkins was at a police substation located approximately one mile from the store. On his way to the store, he saw someone, who was later identified as defendant, walking westbound on the sidewalk on Leona Avenue. Defendant appeared "very nervous" and "almost looked as if he

might have been running." (Feb. 2, 2007, Tr. 142.) It was between 4:30 and 5 a.m. The officer noticed defendant cupping something in his right hand and positioning that hand in a way that the hand was obscured by his right leg. The officer told him to stop. Initially, defendant did not stop but continued to walk. The officer again told him to stop and defendant said, "Who, me?" *Id.* at 144. The officer quickly exited his cruiser.

Defendant stopped and "whatever it was he had in his hand, he had thrown it down to the ground." *Id.* at 146. It did not appear to Officer Adkins that defendant had accidentally dropped the items. Defendant tried to kick what had been in his hand. The items thrown to the ground were later identified as a pair of latex gloves and a stocking knit panty hose. Defendant told the officer that he had been playing basketball at the Mount Vernon Plaza, and that he was on his way to his home on East 21st. Defendant told the officer that Eric Ford was his nephew and that Eric lived with him. To the officer it appeared as though defendant had backtracked or headed in the wrong direction based on what defendant told him. The officer noticed that defendant was sweating "pretty bad" and "breathing kind of heavy." *Id.* at 149-150. The officer placed his hand over defendant's heart, which is a technique used to see if someone has been running, and he found that defendant's "heart was beating pretty good." *Id.*

Columbus Police Detective Daniel McGahhey was the primary detective overseeing the investigation of the shooting and testified that a crowbar and a hoop with an attached plastic bag were found at the scene near Eric Ford's body. Detective McGahhey explained that the use of the hoop with the bag would facilitate a quicker gathering of items. The police recovered a gray sweatshirt in the alley of 1102 Peters Avenue.

After the state's witnesses had testified, defendant's counsel, pursuant to Crim.R. 29, moved for a judgment of acquittal on all four counts. The trial court denied the motion. At the conclusion of the trial, the jury found defendant guilty of tampering with evidence, but could not reach a verdict as to the remaining counts. Therefore, a mistrial was declared as to counts one, two, and three.

A second jury trial was held in August 2007. Columbus Police Detective Tom Seevers, who did not testify at the first trial, testified

in detail at the second trial regarding the collection of the evidence, including the gray sweatshirt, stockings, and gloves. Detective McGahhey, the detective who oversaw the investigation of the shooting, again testified regarding that investigation and the items that were collected in connection with the investigation. Alaind's testimony from the first trial was read into the record. Officer Pappas' testimony at the second trial was substantially the same as his testimony at the first trial. Officer Adkins' testimony at the second trial was also substantially the same as his testimony at the first trial.

Other evidence was presented for the first time at the second trial. At the second trial, a criminalist testified regarding a DNA analysis that she performed in connection with the gray sweatshirt recovered by the police. The criminalist found a match between an oral swab taken from defendant and a sample from the gray sweatshirt. Additionally, Yul Gravely testified regarding his conversations with defendant during their time together at the Franklin County jail. Gravely testified that defendant told him that "[h]e was in [the jail] for breaking in stores. And one of the times that he actually broke in to the store, his nephew got killed and it went bad and he ended up getting caught." (Aug. 20, 2007, Tr. 92.) Gravely also testified that defendant told him that he had lied to the police, including fabricating a story that he had been playing basketball.

At the conclusion of the second trial, defendant was found guilty of murder, a violation of R.C. 2903.02, burglary, a violation of R.C. 2911.12 and a felony of the second degree, and possessing criminal tools, a violation of R.C. 2921.12 and a felony of the fifth degree.

The trial court sentenced defendant to 15 years to life on the murder count (count one), eight years on the burglary count (count two), 11 months on the possession of criminal tools count (count three), and four years on the tampering with evidence count (count four). The trial court ordered the sentences imposed for counts one, two, and three to run concurrently, and ordered the sentence imposed for count four to run consecutively to the sentences imposed for counts one, two, and three. Thus, the total sentence imposed on defendant by the trial court was 19 years to life in prison.

*State v. Ford,* No. 07AP-803, 2008 WL 3970913, at *1-3 (Ohio App. 10th Dist. Aug. 28, 2008).

Petitioner filed a timely appeal in which he raised the following assignments of error:

4

1.    THE TRIAL COURT PLAINLY ERRED BY NOT SUPPRESSING STATEMENTS MADE BY THE DEFENDANT AND EVIDENCE GATHERED AT THE SCENE WHEN THE POLICE ILLEGALLY STOPPED AND DETAINED THE DEFENDANT THEREBY VIOLATING DEFENDANT'S RIGHTS UNDER THE FOURTH AMENDMENT OF THE U.S. CONSTITUTION AND SECTION 14, ARTICLE I OF THE OHIO CONSTITUTION AGAINST UNREASONABLE SEARCHES AND SEIZURES.

2.    DEFENDANT'S CONVICTIONS IN THE FIRST AND SECOND TRIALS WERE NOT SUPPORTED BY THE SUFFICIENCY OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 1 & 16 OF THE OHIO CONSTITUTION.

3.    THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S CRIMINAL RULE 29 MOTIONS FOR JUDGMENT OF ACQUITTAL IN BOTH TRIALS.

4.    DEFENDANT'S CONVICTIONS IN THE FIRST AND SECOND TRIALS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

5.  DEFENDANT'S CONVICTION FOR MURDER UNDER R.C. 2903.02(B) VIOLATED HIS RIGHTS TO DUE PROCESS AND EQUAL PROTECTION AS GUARANTEED BY SECTIONS 2 AND 10, ARTICLE I OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

6.  THE TRIAL COURT ERRED IN ENTERING A GUILTY VERDICT ON THE CHARGE OF FELONY MURDER AS R.C. 2903.02(B) EXPRESSLY PROVIDES THAT THE STATUTE IS INAPPLICABLE WHEN THE DEFENDANT CAN BE CHARGED WITH INVOLUNTARY MANSLAUGHTER.

7.  BASED UPON THE EVIDENCE ADDUCED AT TRIAL, THE DEFENDANT'S CONVICTION FOR MURDER UNDER R.C. 2903.02(B) VIOLATED STATE LAW AND THE DEFENDANT'S RIGHTS TO DUE PROCESS AND EQUAL PROTECTION AND

HIS RIGHTS AGAINST CRUEL AND UNUSUAL PUNISHMENT AS GUARANTEED BY THE FOURTEENTH AND EIGHT[H] AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 1, 2, 9, 10 & 16 OF ARTICLE I OF THE OHIO CONSTITUTION.

8.   DEFENDANT'S NON-MINIMUM AND CONSECUTIVE SENTENCE FOR TAMPERING WITH EVIDENCE VIOLATED THE PROVISION AGAINST EX POST FACTO LAWS AND HIS DUE PROCESS RIGHTS CONTAINED IN THE OHIO AND U.S. CONSTITUTIONS.

9.   THE TRIAL COURT ERRED IN GIVING AMBIVALENT CAUSATION JURY INSTRUCTIONS IN THE MURDER CHARGE AND IN NOT GIVING MORE SPECIFIC JURY INSTRUCTIONS REGARDING CIRCUMSTANTIAL EVIDENCE.

10. TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY NOT SEEKING THE SUPPRESSION OF THE EVIDENCE RESULTING FROM THE STOP AND DETENTION OF THE DEFENDANT; BY FAILING TO SEEK THE DISMISSAL OF THE MURDER CHARGES ON STATUTORY, COMMON LAW, AND CONSTITUTIONAL GROUNDS; BY FAILING TO OBJECT TO THE DEFENDANT'S CONSECUTIVE SENTENCE FOR MURDER AND TAMPERING WITH EVIDENCE; AND BY FAILING TO OBJECT TO THE AMBIGUITY OF THE CAUSATION JURY INSTRUCTIONS.

On May 19, 2008, [Petitioner] moved to file a supplemental brief, which this court granted. Defendant's supplemental assignments of error allege as follows:

*[SUPPLEMENTAL] ASSIGNMENT OF ERROR # 1*

THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY OVERRULING HIS OBJECTIONS TO THE STATE'S USE OF ITS PEREMPTORY CHALLENGES TO EXCLUDE RACIAL MINORITIES BY EXCUSING TWO AFRICAN-AMERICAN MEMBERS OF THE VENIRE PANEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.

*[SUPPLEMENTAL] ASSIGNMENT OF ERROR # 2*

APPELLANT, WHO WAS SENTENCED ON MULTIPLE CHARGES, WAS ENTITLED TO CREDIT FOR 427 DAYS OF PRETRIAL DETENTION AGAINST ALL CONCURRENT TERMS, WHICH INCLUDE HIS SENTENCES FOR HIS FELONY-MURDER AND BURGLARY CONVICTIONS. THE FAILURE TO AWARD JAIL TIME CREDIT AGAINST ALL CONCURRENT TERMS VIOLATES R.C. § 2967.191 AND THE EQUAL PROTECTION CLAUSES OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION AND SECTION 2, ARTICLE I OF THE OHIO CONSTITUTION.

*[SUPPLEMENTAL] ASSIGNMENT OF ERROR # 3*

THE TRIAL COURT VIOLATED APPELLANT'S RIGHTS UNDER THE OHIO RULES OF EVIDENCE AND THE CONFRONTATION CLAUSE BY DETERMINING THAT ALAIND WAS UNAVAILABLE UNDER EVID.R. 804 AND PERMITTING THE STATE TO INTRODUCE ALAIND'S TESTIMONY AT THE SECOND TRIAL, WHICH HAD THE EFFECT OF DENYING TRIAL COUNSEL THE OPPORTUNITY TO CONFRONT AND CROSS EXAMINE ALAIND CONCERNING CLOTHING THAT WAS ALLEGEDLY WORN BY THE APPELLANT DURING THE BURGLARY AND THAT WAS INTRODUCED FOR THE FIRST TIME AT THE SECOND TRIAL.

*Id*. at *3-4.  On August 28, 2008, the appellate court overruled Petitioner's first ten assignments of error and his first and third supplemental assignments of error and sustained his second supplemental assignment of error.  Thus, the appellate court affirmed in part and reversed in part the judgment of the Franklin County Court of Common Pleas and remanded the case to the trial court with instructions to amend its judgment entry to reflect a certification of 427 days of jail-time credit.  *Id.* On February 4, 2009, the Ohio Supreme Court dismissed Petitioner's subsequent appeal.  *State v.*

*Ford*, 120 Ohio St.3d 1506 (2009).

Petitioner also pursued post conviction relief.  On June 20, 2008, he filed a petition for post conviction relief with the state trial court.  He asserted that a claim of prosecutorial and judicial misconduct, ineffective and incompetent counsel.  *Exhibit 17 to Return of Writ.*  On December 22, 2008, Petitioner filed a amendment to his post conviction petition.  *Exhibit 18 to Return of Writ.*  On March 3, 2010, the trial court denied petitioner's post conviction petition as untimely and barred under Ohio's doctrine of *res judicata.  Exhibit 21 to Return of Writ.*  Petitioner did not file an appeal.

On January 19, 2010, Petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He alleges that he is in the custody of the Respondent in violation of the Constitution of the United States based upon the following grounds, repeated here *verbatim*:

> 1.  The police officer violating of my right in search + seizure.  Defendant s[hould] not be charge of felony murder d[ue] to his not (sic) the result of Mr. Eric Ford killing.  Also it was not the proximate result of anything Lawrence A. Ford has did.  Also the Judge has no authority to give this time he gave Mr. Ford.

> 2. Sufficiency of the evidence in violation of Mr. Ford Constitutional right.  Mr. Ford was or did not be at the convenient store.  Was going home from southeast not east.

> 3.  I was not any place near the place of the crime and was stop[ped] because I was the only one walking down a street.  The police was going to tie crime and just stop me?

> 4.  The store clerk was not at the 2nd trial and his testimony was the same as the first trial read for the record because Mr. Alaind's did not show up.

It is the position of the Respondent that Petitioner has procedurally defaulted claims one and three,

and that claims two and four are without merit.

## PROCEDURAL DEFAULT: CLAIMS ONE AND THREE

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless,* 459 U.S. 4, 6 (1982) ( *per curiam* ); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a Court must undertake a four-part analysis when the state argues that a claim is precluded from federal habeas corpus review by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir.1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, the Court must decide whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court determines the petitioner failed to comply with an adequate and independent state procedural rule, then the petitioner must

demonstrate that good cause existed for his failure to follow the procedural rule as well as actual prejudice from the alleged constitutional error. *Id.* This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall,* 757 F.2d 94 (6th Cir.1985).

As this Court construes them, in claims one and three, Petitioner asserts that police conducted an illegal search and seizure. Petitioner, however, failed to file a pre-trial motion to suppress. Therefore, although he raised this claim on direct appeal, the state appellate court reviewed the claim for plain error only:

> Defendant alleges by his first assignment of error that the trial court erred in not suppressing evidence obtained from his encounter with Officer Adkins. Defendant argues that Officer Adkins lacked the necessary articulable and reasonable suspicion to conduct an investigatory stop. However, in the trial court, defendant's counsel did not raise a challenge to defendant's seizure by the police. Therefore, defendant has waived his Fourth Amendment argument absent plain error. *See, e.g., State v. Johnson,* Franklin App. No. 05AP-12, 2006-Ohio-209, at ¶ 17.

> Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court. Crim.R. 52(B). For there to be plain error, a reviewing court must find: (1) an error; (2) the error was an obvious defect in the trial proceedings; and (3) the error affected substantial rights; that is, the trial court's error must have affected the outcome of the trial. *State v. Clinkscale,* Franklin App. No. 06AP1109, 2008-Ohio-1677, at ¶ 10, citing *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240. However, even if a forfeited error satisfies these three prongs, Crim.R. 52(B) does not demand that an appellate court correct it. *Barnes,* at 27, 759 N.E.2d 1240. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, syllabus paragraph three.

> The Fourth Amendment to the United States Constitution, as applied

to the states through the Fourteenth Amendment, and Section 14, Article I of the Ohio Constitution, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The language of Section 14, Article I of the Ohio Constitution and the Fourth Amendment to the United States Constitution are coextensive and provide the same protections. *State v. Robinette* (1997), 80 Ohio St.3d 234, 238-239, 685 N.E.2d 762. " '[T]he underlying command of the Fourth Amendment is always that searches and seizures be reasonable.'" *Wilson v. Arkansas* (1995), 514 U.S. 927, 931, 115 S.Ct. 1914, 131 L.Ed.2d 976, quoting *New Jersey v. T .L.O.* (1985), 469 U.S. 325, 337, 105 S.Ct. 733, 83 L.Ed.2d 720. Searches and seizures conducted without a warrant are per se unreasonable unless they come within one of the " 'few specifically established and well delineated exceptions.'" *Minnesota v. Dickerson* (1993), 508 U.S. 366, 372, 113 S.Ct. 2130, 124 L.Ed.2d 334, quoting *Thompson v. Louisiana* (1984), 469 U.S. 17, 20, 105 S.Ct. 409, 83 L.Ed.2d 246. Evidence is inadmissible if it stems from an unconstitutional search or seizure. *Wong Sun v. United States* (1963), 371 U.S. 471, 484-485, 83 S.Ct. 407, 9 L.Ed.2d 441.

An investigative stop, or "Terry stop," is a common exception to the Fourth Amendment warrant requirement. *Terry v. Ohio* (1968), 392 U.S. 1, 20-22, 30-31, 88 S.Ct. 1868, 20 L.Ed.2d 889. A Fourth Amendment seizure, which includes a Terry stop, occurs when, in view of all the surrounding circumstances, a "reasonable person" would have believed that "he was not free to leave." *United States v. Mendenhall* (1980), 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497. A police officer may stop an individual if the officer has a reasonable suspicion, based upon specific and articulable facts, that criminal behavior has occurred or is imminent. *Terry.* However, an officer's mere "hunch" is insufficient to justify a Terry stop. *Id.* at 27. The propriety of an investigative stop must be viewed in light of the totality of the circumstances. *State v. Freeman*, (1980), 64 Ohio St.2d 291, 414 N.E.2d 1044, paragraph one of the syllabus.

Because defendant did not make his Fourth Amendment challenge in the trial court, no suppression hearing was held. Thus, the reasons for Officer Adkins stopping defendant may not have been fully developed in the trial court. Nonetheless, evidence at the trials supported the officer's decision to conduct a Terry stop.

The evidence indicated that when the shooting was reported on the police radio at approximately 4:30 a.m., Officer Adkins was only one mile from the store. While en route, the officer received additional information that a front window at the store was broken, and that two persons may have been involved. Before he arrived at the Express Market, the officer saw defendant walking on the sidewalk a few blocks from the store. Thus, defendant was observed, in close proximately to where the shooting occurred, shortly after the shooting, and at a time of day in which it is less common for someone to be walking on the sidewalk. In addition, the officer noticed that defendant was cupping something in his hand, and defendant appeared nervous to the officer. We resolve that these facts provided the officer with a reasonable and articulable basis to stop defendant to investigate the reported criminal activity.

Accordingly, we overrule defendant's first assignment of error.

*State v. Ford,* 2008 WL 3970913, at *5-6.

The United States Court of Appeals for the Sixth Circuit has held that plain error review does not constitute a waiver of the state's procedural default rules. *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Williams v. Bagley,* 380 F.3d 932, 968 (6th Cir. 2004). Petitioner therefore has waived his allegation in claims one and three.

Petitioner may still obtain review of his claims on the merits if he establishes cause for his procedural default, as well as actual prejudice from the alleged constitutional violations.

" '[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[;] ... some objective factor external to the defense [that] impeded ... efforts to comply with the State's procedural rule."

*Maples v. Stegall,* 340 F.3d 433, 438 (6th Cir.2003)(quoting *Coleman v. Thompson,* 501 U.S. 722, 753 (1991)).

12

Petitioner has failed to establish cause for his procedural default of claims one and three.

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier,* 477 U.S. at 491; *see also Sawyer v. Whitley,* 505 U.S. 333 (1992). After review of the record, the Court does not deem this to be such a case.

## SUFFICIENCY OF THE EVIDENCE: CLAIMS ONE AND TWO

In claim one, Petitioner asserts that he was not the proximate cause of Mr. Ford's death and, therefore, cannot be charged with felony murder.  In claim two, Petitioner asserts that the evidence was constitutionally insufficient to sustain his convictions.  The state appellate court rejected these claims as follows:

> R.C. 2903.02(B), Ohio's felony-murder statute, provides as follows: "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903 .04 of the Revised Code." Thus, the elements of felony murder under R.C. 2903.02(B) are: (1) cause; (2) the death of another; (3) as a proximate result of the offender's committing or attempting to commit; and (4) an offense of violence that is a felony of the first or second degree and that is not a violation of R.C. 2903.03 (voluntary manslaughter) or R.C. 2903.04 (involuntary manslaughter). *State v. Peterson*, Franklin App. No. 07AP-303, 2008-Ohio-2838, at ¶ 65, citing *State v. Sexton*, Franklin App. No. 01AP-398, 2002-Ohio-3617, at ¶ 38.

> ***

> Here, the underlying felony is burglary, which is prohibited by R.C. 2911.12. R.C. 2911.12 provides in pertinent part that no person, by force, stealth, or deception, shall trespass in an occupied structure when another person other than an accomplice is present, with purpose to commit in the structure any criminal offense. The criminal offense alleged in this case, for purposes of the burglary charge, was a theft offense.

13

\*\*\*

We. . .  address defendant's argument that he cannot be convicted of felony murder because he was not the immediate cause of death and the decedent was a co-felon. In *Dixon,* the Second District Court of Appeals observed that there are two theories concerning the crime of felony murder. Under the "agency theory," the state must prove that either the defendant, or someone acting in concert with him or her, killed the victim and that the killing occurred during the perpetration of and in furtherance of the underlying felony offense. *Dixon,* citing *Moore v. Wyrick* (C.A.8, 1985), 766 F.2d 1253; *State v. Chambers* (1977), 53 Ohio App.2d 266, 373 N.E.2d 393. Conversely, under the "proximate cause theory" of felony murder:

> [I]t is irrelevant whether the killer was the defendant, an accomplice, or some third party such as the victim of the underlying felony or a police officer. Neither does the guilt or innocence of the person killed matter. A defendant can be held criminally responsible for the killing regardless of the identity of the person killed or the identity of the person whose act directly caused the death, so long as the death is the 'proximate result' of defendant's conduct in committing the underlying felony offense; that is, a direct, natural, reasonably foreseeable consequence, as opposed to an extraordinary or surprising consequence, when viewed in the light of ordinary experience.

(Citations omitted.) *Dixon.*

Considering the proximate causation language used in R.C. 2903.02(B), and that the statute does not provide that the defendant or an accomplice must be the immediate cause of death, it is clear that Ohio has adopted the proximate cause theory. See *Dixon.* Therefore, under Ohio's felony-murder statute, it is irrelevant whether the killer is the defendant, an accomplice, or a third party. *State v. Franklin*, Mahoning App. No. 06-MA-79, 2008-Ohio-2264, at ¶ 111.

\*\*\*

In determining the sufficiency of the evidence, an appellate court must "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the

14

defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. Also, "individual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it. The sum of an evidentiary presentation may well be greater than its constituent parts." *Bourjaily v. United States* (1987), 483 U.S. 171, 179-180, 107 S.Ct. 2775, 97 L.Ed.2d 144. Whether the evidence is legally sufficient to sustain a verdict is a question of law, not fact. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541.

\*\*\*

We first address defendant's conviction for tampering with evidence, as defendant was convicted of that offense at the first trial. R.C. 2921.12 prohibits tampering with evidence and provides, in pertinent part, as follows:

> (A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

> (1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]

Officer Adkins' testimony at the first trial indicated that he told defendant to stop on Leona Avenue, and as he approached defendant, defendant was cupping the stockings and gloves in his right hand and was trying to hide the items behind his right leg. Officer Adkins' testimony at the first trial further indicated that defendant threw the stockings and gloves to the ground and tried to kick the items as the officer was approaching him.

When viewed in a light most favorable to the state, the evidence at the first trial supported defendant's conviction for tampering with evidence. . . .

\*\*\*

We next address defendant's argument that his convictions for murder, burglary, and possession of criminal tools were not supported

15

by sufficient evidence at the second trial and that these convictions were against the manifest weight of the evidence.

The evidence at the second trial mirrored the evidence at the first trial in many significant ways. The evidence at the second trial demonstrated that Eric Ford was shot and killed by Alaind after Eric Ford and another intruder broke into the Express Market when the store was closed and locked. Alaind could see the presence of two intruders but, considering the darkness, had a difficult time identifying their personal characteristics. A crowbar and a bag with a hoop on the end were found near Eric Ford's body. Defendant was confronted by Officer Adkins shortly after the shooting. Defendant threw items to the ground upon being approached by Officer Adkins. These items were later identified as rubber gloves and stockings. Defendant was sweating, stuttering with his speech, and his heart "was beating pretty good." (Aug. 20, 2007, Tr. 30.) Defendant explained to Officer Adkins that he was on his way to his home on East 21st Street, and that he had been playing basketball at the Mount Vernon Plaza. In Officer Adkins' view, defendant's explanation that he was heading to his home from playing basketball seemed to indicate that defendant was backtracking.

In addition, the state presented DNA evidence at the second trial indicating that defendant's cells were on the gray sweatshirt that was found by the police after the shooting. Moreover, Gravely, who was jailed with defendant at the Franklin County jail, testified that defendant told him about a burglary that "went bad" when he and his nephew were confronted and his nephew was killed.

We find that the evidence at the second trial was sufficient to convict defendant of murder, burglary, and possessing criminal tools. Like the evidence at the first trial, the evidence at the second trial, when viewed in a light most favorable to the state, supported a finding that defendant was the second intruder at the store when Eric Ford was killed. The evidence supported a finding that Eric Ford and defendant broke into the store with intent to steal. The evidence further supported a finding that Eric Ford's death was a proximate result of the burglary. Lastly, the evidence supported a finding that defendant possessed the rubber gloves and stockings as criminal tools.

*State v. Ford*, 2008 WL 3970913, at \*9-13.[1]

      The factual findings of the state appellate court are presumed to be correct.  28 U.S.C. § 2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Further, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented. 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Court of Appeals for the Sixth Circuit recently summarized this standard:

---

[1] Because Petitioner does not raise in these proceedings either a claim that his convictions were against the manifest weight of the evidence, or that the trial court improperly denied his motion for judgment of acquittal under Ohio Criminal Rules, this Court has omitted those portions of the appellate court's discussion of those claims.  Such claims, moreover, fail to present issues appropriate for federal habeas review.  *See* 28 U.S.C. § 2254(a); *Pulley v. Harris*, 465 U.S. 37, 41 (1984)("A federal court may not issue the writ based on a perceived error of state law"); *Tibbs v. Florida*, 457 U.S. 31, 41-47 (1982)(claim that conviction was against the manifest weight of the evidence present an issue regarding state law.)

> Under the "contrary to" provision, a federal habeas court should grant the writ "if the state court arrived at a conclusion 'opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" *Boykin v. Webb,* 541 F.3d 638, 642 (6th Cir.2008) (quoting *Williams v. Taylor,* 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Under the "unreasonable applications" clause, a habeas court may grant the writ if the state court identified the correct legal principle from the Supreme Court's decisions but unreasonably applied that principle to the petitioner's case. *Id.*

*Raver v. Brunsman,* 2010 WL 2545489 (6th Cir. June 21, 2010). Petitioner has failed to meet this standard here.

A criminal defendant can be convicted consistent with the United States Constitution only if sufficient evidence could justify a reasonable trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). To determine whether the evidence was sufficient to support a conviction, this Court must view the evidence in the light most favorable to the prosecution. *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson,* at 319). The prosecution is not affirmatively required to "rule out every hypothesis except that of guilty." *Id.* (quoting *Jackson,* at 326). "[A] reviewing court 'faced with a record that supports conflicting inferences must presume – even if it does not appear on the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.' " *Id.* (quoting *Jackson,* at 326).

Upon review of the record, and for the reasons discussed by the state appellate court, this Court agrees that, when viewing all of the evidence in the light most favorable to the prosecution, the evidence was constitutionally sufficient to sustain Petitioner's convictions. In short, the record fails to reflect that the state appellate court's decision was so unreasonable as to justify federal habeas corpus relief.

18

## CONFRONTATION CLAUSE:  CLAIM FOUR

In claim four, liberally construing Petitioner's pleadings, he asserts that admission of Hussam

Alaind's testimony from his first trial violated his rights under the Confrontation Clause.  The state

appellate court rejected this claim as follows:

> [D]efendant argues that the trial court erred in admitting, at the
> second trial, Hussam Alaind's testimony from the first trial because
> the state did not establish Alaind's unavailability. . . .

> . . . . [D]efendant . . . contends that the trial court erred in allowing
> Alaind's testimony from the first trial to be admitted into evidence at
> the second trial because it violated the Ohio Rules of Evidence and
> *Crawford v. Washington* (2004), 541 U.S. 36, 124 S.Ct. 1354, 158
> L.Ed.2d 177, "particularly in light of the new DNA testimony
> regarding said sweatshirt offered at the second trial." (Defendant's
> June 25, 2008 Notice of Withdrawal.) Defendant essentially argues
> that he never had an opportunity to cross-examine Alaind in further
> detail about the gray sweatshirt in view of the DNA evidence
> admitted at the second trial.

> Evid.R. 804(B)(1) allows the use of former testimony if the declarant
> is unavailable as a witness, and states as follows:

>> The following are not excluded by the hearsay rule if
>> the declarant is unavailable as a witness:

>> (1) *Former testimony.* Testimony given as a witness
>> at another hearing of the same or a different
>> proceeding, or in a deposition taken in compliance
>> with law in the course of the same or another
>> proceeding, if the party against whom the testimony
>> is now offered, or, in a civil action or proceeding, a
>> predecessor in interest, had an opportunity and similar
>> motive to develop the testimony by direct, cross, or
>> redirect examination. Testimony given at a
>> preliminary hearing must satisfy the right to
>> confrontation and exhibit indicia of reliability.

19

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." The Sixth Amendment is made applicable to the states through the Fourteenth Amendment to the United States Constitution. *Pointer v. Texas* (1965), 380 U.S. 400, 85 S.Ct. 1065, at 403-406. The right to confrontation may require exclusion of certain types of hearsay statements, even if those statements would otherwise be admissible under an exception to the hearsay rule. *See Crawford, supra*. In *Crawford,* the Supreme Court of the United States held that out-of-court statements that are testimonial are barred under the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of whether the statements are deemed reliable by the trial court.

Alaind testified at the first trial and defendant's counsel cross-examined him. Even so, defendant essentially argues that Alaind's testimony did not constitute "former testimony" insofar as defendant's counsel was unable to cross-examine him regarding the DNA found on the gray sweatshirt. Although the DNA evidence was not brought forth at the first trial, defendant's counsel at the first had an opportunity and similar motive to develop any testimony regarding what the second intruder was wearing. Defendant's counsel did in fact cross-examine Alaind regarding his ability to see what the intruders were wearing. Moreover, Alaind was not an expert who could have provided testimony to rebut the state's expert concerning the DNA analysis conducted on the sample from the sweatshirt. Thus, we find that Alaind's testimony at the first trial constituted "former testimony" for purposes of Evid.R. 804(B)(1).

Additionally, defendant argues that it was not shown that Alaind was unavailable as a witness at the second trial. Under Evid.R. 804(A)(5), a declarant is "unavailable as a witness" when he or she "is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance * * * by process or other reasonable means." In *State v. Keairns* (1984), 9 Ohio St.3d 228, 460 N.E.2d 245, the Supreme Court of Ohio held that: "A showing of unavailability under Evid.R. 804 must be based on testimony of witnesses rather than hearsay not under oath unless unavailability is conceded by the party against whom the statement is being offered." *Id.* at paragraph three of the syllabus. Also, "[a] witness is not considered unavailable unless the prosecution has

made reasonable efforts in good faith to secure his presence at trial."
*Id*. at 230, 460 N.E.2d 245.

On the first day of the second trial, an evidentiary hearing was held concerning whether Alaind's testimony at the first trial could be read into evidence at the second trial. Defense counsel did not concede Alaind's unavailability.

Detective McGahhey testified as follows concerning the efforts that were made to secure Alaind's presence at the second trial. Alaind, who is from Jordan, was living in New Orleans in February 2007. Alaind was reluctant to testify, but he ultimately was persuaded to testify at the first trial. The detective met with Alaind and his brother a few days before the second trial was originally scheduled to begin, August 6, 2007, and he served Alaind with a personal service subpoena. Alaind did not appear at court on August 6, 2007. The detective was given a personal service subpoena to serve on Alaind for the August 17, 2007, trial date, but he was unable to find Alaind. Sometime between August 6, 2007, and the start of trial on August 17, 2007, the detective talked with Alaind's brother. Alaind's brother believed that Alaind was in Columbus, but he did not know exactly where his brother was living. The detective was unable to contact Alaind, despite leaving three messages for him. He also searched for Alaind at the convenience store owned by Alaind's brother, as well as the Express Market. In a final effort to find Alaind, the detective went to Alaind's brother's residence the night before the trial began on August 17, 2007. Alaind was not there.

The lead prosecutor explained his and another prosecutor's efforts to secure Alaind's presence at the second trial. A prosecutor was at court on August 6, 2007, and waited for Alaind to arrive, but he did not show. The lead prosecutor sent subpoenas to New Orleans and Columbus addresses, but he did not hear from Alaind. He left a message on Alaind's brother's cell phone on August 15, 2007, but received no response.

Although the prosecutor's statements were not under oath, defense counsel did not object to the prosecutor's statements on the basis that they were unsworn. However, without even considering the statements of the prosecutor, the testimony of the detective provided ample evidence that reasonable efforts in good faith were made to

21

secure Alaind's presence at the second trial. Therefore, we resolve that the trial court did not err in finding that Alaind was "unavailable as a witness" at the second trial for purposes of Evid.R. 804(A)(5).

For these same reasons, we find that Alaind was unavailable and defendant had a prior opportunity for cross-examination for purposes of *Crawford*. Thus, the trial court did not err in allowing Alaind's testimony from the first trial to be admitted as evidence in the second trial because the testimony was admissible under both Evid.R. 804(B)(1) and *Crawford* .

Accordingly, we overrule defendant's third supplemental assignment of error.

*State v. Ford*, 2008 WL 3970913, at *18-20.  Petitioner does not dispute the factual findings of the state appellate court, which are presumed to be correct.  28 U.S.C. § 2254(e).  Review of the record fails to indicate that the state appellate court's decision is unreasonable so as to justify federal habeas corpus relief.  28 U.S.C. § 2254(d).

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to physically confront and cross examine adverse witnesses at all stages of the trial.  *Illinois v. Allen*, 397 U.S. 337, 388 (1970). In *Crawford v. Washington,* 541 U.S. 36 (2004), the United States Supreme Court abrogated its holding in *Ohio v.Roberts,* 448 U.S. 56 (1980), and re-defined the test for determining whether admission of hearsay statements violates the Confrontation Clause. The Supreme Court held in *Crawford*  that testimonial statements of a witness who does not appear at trial are inadmissible unless the witness was unavailable to testify and the defense had a prior opportunity for cross-examination.  The Court held that, "[w]here testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross examination."  *Id.* at 1366. However,

[t]he Court explicitly left untouched the application of *Roberts* to

22

cases involving nontestimonial hearsay: "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law-as does *Roberts,* and as would an approach that exempted all such statements from Confrontation Clause scrutiny altogether." *Crawford,* 541 U.S. at 68, 124 S.Ct. 1354, 158 L.Ed.2d 177. As the courts applying *Crawford* have observed,

> [t]he lynchpin of the *Crawford* decision thus is its distinction between testimonial and nontestimonial hearsay; simply put, the rule announced in *Crawford* applies only to the former category of statements.... [U]nless a particular hearsay statement qualifies as "testimonial," *Crawford* is inapplicable and *Roberts* still controls.

*Coy v. Renico*, 414 F. Supp. 2d 744, 773 (E.D. Mich. 2006)(citing *United States v. Hendricks,* 395 F.3d 173, 179 (3d Cir. 2005)); *Horton v. Allen,* 370 F.3d 75, 83-84 (1st Cir. 2004). The Supreme Court declined to spell out a comprehensive definition of the term "testimonial," but concluded that, at a minimum, the term includes "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." *Crawford,* 541 U.S. at 68. A causal remark to an acquaintance, business records, and statements made in furtherance of a conspiracy do not constitute testimonial statements subject to the strictures of the Sixth Amendment. *Id.* at 1364-, 67. Further, "[t]he admission of a testimonial statement in and of itself is not enough to trigger a violation of the Confrontation Clause. Instead, the statement must be used as hearsay-in other words, it must be offered for the truth of the matter asserted." *United States v. Pugh,* 405 F.3d 390, 399 (6th Cir. 2005). A violation of the Confrontation Clause is subject to harmless error review. *Id.* at 400, citing *Jordan v. Hurley,* 397 F.3d 360, 363 (6th Cir. 2005).

The record indicates that the witness was unavailable and that Petitioner had sufficient

opportunity to cross examine the witness at the prior trial.  Therefore, the record fails to reflect a violation of the Confrontation Clause.

Claim four is without merit.

**WHEREUPON,** the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

### PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation,* that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation.  See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

/s/ Elizabeth A Preston Deavers
Elizabeth A. Preston Deavers
United States Magistrate Judge